No. 20200713-CA

THE UTAH COURT OF APPEALS

———————————

HOWELL MANAGEMENT SERVICES, LLC,
*Appellee*,
v.
AUGUST EDUCATION GROUP, LLC, AND APARNA VASHISHT ROTA,
*Appellants*.

———————————

## Public

## Brief of Appellants August Education Group, LLC, and Aparna Vashisht Rota

———————————

On appeal from the First Judicial District Court, Cache County,
Honorable Angela F. Fonnesbeck, District Court No. 170100325

———————————

Jefferey W. Shields
Nathan D. Thomas
Elizabeth Butler
JONES, WALDO, HOLBROOK &
MCDONOUGH, P.C.
jshields@joneswaldo.com
nthomas@joneswaldo.com
ebutler@joneswaldo.com
170 South Main Street, Suite 1500
Salt Lake City, Utah 84101

*Attorneys for Appellee Howell
Management Services, LLC*

Kenneth L. Reich (8578)
REICH LAW GROUP
PO Box 852
Farmington, Utah 84025
ken@reichlawgroup.com
(801) 923-8885

*Attorney for Appellants August
Education Group, LLC, and Aparna
Vashisht Rota*

———————————

Oral Argument Requested

## Current and Former Parties

**Appellants**

     August Education Group, LLC, and Aparna Vashisht Rota

**Appellee**

     Howell Management Services, LLC

**Parties Below Not Parties to the Appeal**

     None

# Table of Contents

Current and Former Parties ........................................................................ i

Addenda..................................................................................................iv

Introduction ............................................................................................. v

Statement of the Issues.............................................................................. 1

Statement of the Case ............................................................................... 5

    Background ..................................................................................... 5

    The trial court entered Privacy and Protective orders ............................. 5

    The TRO Proceeding and Gag Order ................................................. 6

    The Motions.................................................................................. 10

    The Contempt Motion..................................................................... 14

    The Hearing on the Show Cause Motion ............................................ 18

    The Contempt Order ...................................................................... 23

    The Denial Order........................................................................... 26

Summary of the Argument ....................................................................... 27

Argument............................................................................................... 29

    1.    The District Court Applied the Incorrect Legal Standard................ 29

        1.1    The Contempt Order entered an order of criminal
             contempt, not civil contempt ........................................ 31

        1.2    The district court failed to apply to proper legal
             standard ..................................................................... 32

        1.3    The district court failed to make specific findings
             supporting criminal or civil contempt elements ................... 33

    2.    The District Court Violated Ms. Rota's Due Process Rights ............ 42

2.1    Ms. Rota was not provided notice that the hearing was evidentiary and pursuant to an issued order to show cause ................................................................ 42

2.2    The district court did not provide opportunity to present evidence or to confront witnesses ................................ 44

3.    The Contempt Order Was Based on Erroneous Factual Evidence ............................................................................................ 45

3.1    Alternatively, the Contempt Order Was Unwarranted Under the Civil Contempt Standard ......................................... 49

3.2    Alternatively, the Contempt Order Was Unwarranted as a Discovery Sanction Under Rule 37(b)(4) ........................... 49

4.    Striking Ms. Rota's Answer and Counterclaim Is Unwarranted and Excessive Under the Circumstances ............................................. 49

4.1    Striking pleadings and defaulting Ms. Rota was excessive and an abuse of discretion ........................................ 49

5.    The Gag Order Is Unconstitutional and Should Be Dissolved ......... 53

5.1    The Gag Order is vague and chills communication ............... 53

5.2    The Gag Order should have been dissolved when the district court defaulted Ms. Rota ............................................... 54

Conclusion ........................................................................................................ 55

## Addenda

A       November 6, 2017 Order Classifying the Verified Complaint Against
        August Education Group, LLC and Aparna Vashisht Rota [and the Docket]
        as Protected, herein the "Privacy Order" [R. 62-65]

B       November 28, 2018 Stipulated Protective Order, herein the "Protective
        Order" [R. 664-674]

C       March 21, 2019 Order (served on March 22, 2019) herein the "Gag Order"
        [R. 1182-1184]

D       September 2, 2020 MEMORANDUM DECISION on Amended Motion for
        Issuance of an Order to Show Cause Re: Contempt of Protective Order,
        herein the "Contempt Order" [R. 5897-5918]

E       September 2, 2020 MEMORANDUM DECISION denying Defendants'
        Verified Motion to Amend March 21, 2019 Order and, in the Alternative,
        Motion for Exemption to Existing Order, herein the "Denial Order" [R.
        5890-5896]

## CASES

*Amica Ins. Co. v. Schettler*, 768 P.2d 950 (Utah Ct. App. 1989) ...............................50

*Anderson v. Thompson*, 2008 UT App 3, 176 P.3d 464 ...............................................30

*Cache County v. Beus*, 2005 UT App 204, 128 P.3d 63 ..................................................2

*Chen v. Stewart*, 2004 UT 82, 100 P.3d 1177, *overruled on other grounds*

    *by State v. Nielsen*, 2014 UT 10, 326 P.3d 645 ...........................................................3

*Cook Martin Poulson PC v. Smith*, 2020 UT App 57, 464 P.3d 541 ............................4

*Desert Mountain Gold LLC v. Amnor Energy Corp.*, 2017 UT App 218,

    409 P.3d 74 ....................................................................................................................35

*Dickman Family Props., Inc. v. White*, 2013 UT App 116, 302 P.3d 833 ..............3, 32

*Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992) .................................................51

*Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F.Supp.3d 666

    (N.D. Ill. 2016) .............................................................................................................34

*First Fed. Sav. & Loan Assn. v. Schamanek*, 684 P.2d 1257 (Utah 1984)...................50

*Foreman v. Foreman*, 111 Utah 72, 176 P.2d 144 (1946) .............................................35

*Hales v. Oldroyd*, 2000 UT App 75, 999 P.2d 588 ........................................................50

*In re Estate of Leone*, 860 P.2d 973 (Utah Ct. App. 1993) ..............................................4

*Iota LLC v. Davco Mgmt. Co.*, 2016 UT App 231, 391 P.3d 239 ............................... 35

*Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, 199 P.3d 957 ........................ 4, 49

*Koehler v. Allen*, 2020 UT App 73, 466 P.3d 738 ................................................... 33

*Lee v. Max International, LLC.*, 638 F.2d 1318 (10th Cir. 2011) ............................... 52

*Lundahl Farms LLC v. Nielsen*, 2021 UT App 146 ................................................... 2

*Marshall v. Marshall*, 915 P.2d 508, 512 (Utah Ct. App. 1996) ............................... 50

*Myers v. Utah Transit Auth.*, 2014 UT App 294, 341 P.3d 935 .................................. 2

*Rodriguez v. Kroger Co.*, 2018 UT 25, 422 P.3d 815 ................................................ 1

*Salt Lake City v. Dorman-Ligh*, 912 P.2d 452 (Utah App. 1996) .............................. 42

*Saunders v. Sharp*, 818 P.2d 574 (Utah Ct.App.1991) ............................................. 2

*Shipman v. Evans*, 2004 UT 44, 100 P.3d 1151 ........................................................ 30

*State v. Bisner*, 2001 UT 99, 37 P.3d 1073 ............................................................... 2

*State v. Hurst*, 821 P.2d 467 (Utah Ct. App. 1991) ................................................. 33

*State v. L.A.*, 2010 UT App 356, 245 P.3d 213 ........................................ 35, 36, 39, 40

*Utah Dept. of Transp. v. Osguthorpe*, 892 P.2d 4 (Utah 1995) ................................. 49

*Von Hake v. Thomas*, 759 P.2d 1162 (Utah 1988), *superseded on other
      grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct.App.1991) ....... passim

## Introduction

This interlocutory appeal arises out of a contract dispute wherein the trial court struck the answer and counterclaims of Aparna Vashisht Rota and her company, August Education Group, LLC (collectively "Ms. Rota").

Ms. Rota appeals the Contempt Order, the Denial Order, and the Gag Order. The Contempt Order struck Ms. Rota's answer and substantial counterclaims for disputed yet technical and non-prejudicial violations of an ambiguous Protective Order. The Denial Order perpetuated a vague, unconstitutional, and unwarranted Gag Order despite dismissal of Ms. Rota's claims. This appeal challenges the Contempt Order, Denial Order, Gag Order, and, as necessary, the Protective Order (all in the addendum).

## Statement of the Issues

**Issue 1 – Contempt—Erroneous Legal Standard**: Whether the district court applied the incorrect legal standard in finding Ms. Rota in contempt?

Standard of Review: "We review whether the district court applied the correct legal standard for correctness." *Rodriguez v. Kroger Co.*, 2018 UT 25, ¶ 11, 422 P.3d 815.

Preservation: This matter was not required to be preserved with the trial court because 1) this court granted the present immediate interlocutory appeal which deprived the trial court of jurisdiction and 2) the matter of the correct legal standard was not briefed by the parties and was adopted by the court *sua sponte*

without an opportunity for input as to the standard of proof from the parties

prior to this interlocutory appeal. *See Myers v. Utah Transit Auth.*, 2014 UT App

294, 341 P.3d 935 (quoting *Saunders v. Sharp*, 818 P.2d 574, 577 (Utah

Ct.App.1991) ("Generally, when a party files a timely notice of appeal, the court

that issued the judgment loses jurisdiction over the matters on appeal."); *see also*

*State v. Bisner*, 2001 UT 99, ¶ 39, 37 P.3d 1073 (observing that a trial court is

divested of jurisdiction to reconsider an order by the defendant's filing a notice of

appeal from the final judgment).

<u>**Issue 2 – Contempt—Unsupported by Findings**</u>: Whether the district

court abused its discretion when it relied on unsupported and erroneous

allegations for finding Ms. Rota in contempt?

Standard of Review: A challenge to a trial court's legal conclusion that

evidence proves a claim are reviewed "for correctness, 'according the trial court

no particular deference.'" *Lundahl Farms LLC v. Nielsen*, 2021 UT App 146

(cleaned up; citations omitted).

"A trial court's findings of fact […] will not be set aside unless they are

clearly erroneous." *Cache County v. Beus*, 2005 UT App 204, 128 P.3d 63 (citation

omitted).

"The decision to hold a party in contempt of court rests within the sound

discretion of the trial court and will not be disturbed on appeal unless the trial

court's action is so unreasonable as to be classified as capricious and arbitrary, or

a clear abuse of discretion." *Dickman Family Props., Inc. v. White*, 2013 UT App 116, ¶ 2, 302 P.3d 833 (citations omitted).

Preservation: This matter was preserved in the record. [R. 2749-2761, 3868-3951]

**Issue 3 – Contempt—Violation of Due Process**: Whether the district court violated Ms. Rota's constitutional rights, including due process, when, without proper notice, briefing, warning, or evidence presented by the parties, it performed a *sua sponte* determination of purported willful behavior, bad faith conduct, fault, and persistent dilatory tactics in its Contempt Order?

Standard of Review: "Constitutional issues, including questions regarding due process, are questions of law that [appellate courts] review for correctness." *Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177, *overruled on other grounds by State v. Nielsen*, 2014 UT 10, 326 P.3d 645.

Preservation: This matter was preserved in the record. [R. 2749-2761, 3868-3951]

**Issue 4 – Contempt—Excessive Sanction**: Whether the district court erred when it struck Ms. Rota's Answer and Counterclaim for minor technical violations of an ambiguous Protective Order that resulted in no prejudice to any party, the judicial process, or to the court?

Standard of Review: "'When reviewing a district court's decision to find a party in contempt, we review the district court's findings of fact for clear error

and its legal determinations for correctness.'..." *Cook Martin Poulson PC v. Smith*, 2020 UT App 57, 464 P.3d 541. "We review the imposition of contempt or discovery sanctions for abuse of discretion." *Id.* (citing *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957).

Preservation: This matter was preserved in the record. [R. 2749-2761, 3868-3951]

**Issue 5 – Gag Order—Unconstitutional**: Did the district court err when it failed to revise, strike, or amend the Gag Order because it violates free speech, is vague and ambiguous, and/or is an unsanctioned non-compete restricting Ms. Rota's ability to earn a living and was no longer required to produce a "fair trial"?

Standard of Review: "Whether a gag order violates the right to free speech presents a question of law, which we review for correctness." *State Ex Rel. LM.*, 2001 UT App 314, ¶ 13, 37 P.3d 1188 (citation omitted). This court reviews for correctness the interpretation of an unambiguous order. *In re Estate of Leone*, 860 P.2d 973, 975 (Utah Ct. App. 1993).

Preservation: This matter was preserved in the record. [R. 1108-1129, 1182-1185, 1269-1316, 3041-3053, 3296-3303, 3868-3951]

## Statement of the Case

### Background

Ms. Rota entered into a series of authorized representative agreements with Howell Management Services, LLC (herein "Howell"), and performed substantial work for Howell. [R. 93-95] When Ms. Rota and Howell reached an impasse in their relationship, Howell filed this action. [R. 12-30]

### The trial court entered Privacy and Protective orders

At the outset of the case before Ms. Rota had been served or appeared, Howell sought and the trial court entered an order classifying the docket as protected (the "Privacy Order"). Adden. A. The Privacy Order ordered the court clerk "protect" the docket but imposed no restriction on any party. *Id*. After service of the Summons and Howell's Complaint, Ms. Rota answered and filed counterclaims for 1) ██████████, 2) ██████████████, and 3) ██████████. [R. 537]

After exchanging initial disclosures but before commencing written discovery, the parties submitted a Stipulated Protective Order that the trial court entered on November 28, 2018 (the "Protective Order"). Adden. B. The parties then exchanged documents, some of which were stamped "Confidential" per the Protective Order. [R. 2671]

Concurrent with the present litigation, Ms. Rota commenced

confidential arbitration against 

[R. 2672, 2233-2234]

**The TRO Proceeding and Gag Order**

In February 2019, Howell filed a Motion for Temporary Restraining

Order and Preliminary Injunction (the "TRO Motion") against Ms. Rota. [R.

771] The motion asserted that Ms. Rota ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. [R. 789-90] After briefing, the

court held a hearing March 4, 2019. [R. 1166]

At the hearing, the district court declined to enter a restraining order

but was concerned about "the biggest concern of the Court is that it's unfairly

prejudicing a trial, a potential trial, with witnesses…." [R. 1302] Howell's

TRO motion never asserted that the emails violated the Protective Order or

the Privacy Order. [R. 771] In its TRO reply brief, however, Howell requested

that Ms. Rota be precluded from violating the Protective Order and the

Privacy Order but made no assertion that such a violation had already

occurred. [R. 1130-1132, 1148] Howell argued for the first time at the hearing that Ms. Rota was violating the Privacy Order and Protective Order by the emails. [R. 1272, 1274, 1276, 1260]

At the hearing, the trial court, without the matter being briefed, any evidence provided, or otherwise having the matter addressed by the parties other than as mentioned above, made an off-hand comment concerning such unfounded and unidentified violations:



[R. 1307]

Instead of issuing a restraining order, the court issued the following gag order from the bench: ████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████

█████████████████████ [R. 1308]. The trial court then issued on March 22,

2019, its own written order from the hearing which provided as follows:



Gag Order. [R. 1182-83] Of note, ████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████ ,

████████████████████████████████████████

████████████████████. *Id.*

    The parties next pursued written discovery. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

---

[1] Ms. Rota's Motion to Stay Discovery



**The Motions**

From June 2019 through October 2019, the parties filed nine competing

motions:

1) Howell's Motion for Partial Summary Judgment re: Defamation filed

May 3, 2019; [R. 1559-1592]

2) Ms. Rota's Motion to Strike filed June 7, 2019; [R. 2134]

3) Howell's Statement of Discovery Issues filed June 18, 2019; [R. 2512]

4) Howell's Show Cause Motion, infra, filed June 26, 2019; [R. 2632]

5) Ms. Rota's Motion for Partial Summary Judgment filed June 30, 2019; [R. 2701]

6) Ms. Rota's Verified Motion to Amend March 21 Order filed August 22, 2019; [R. 3041]

7) Howell's Statement of Discovery Issues filed September 3, 2019; [R. 3092]

8) Howell's Motion to Exclude Damages Evidence filed October 21, 2019; [R. 3389]

9) Howell's Motion for Summary Judgment on Counterclaim filed October 21, 2019; [R. 3487]

The trial court combined the nine motions for hearing held in court on November 13, 2019. The trial court expressly held that the court's rulings on Howell's Show Cause Motion (#4) resolved in the Contempt Order and Ms. Rota's Motion to Amend (#6) resolved in the Denial Order, rendered moot seven of the nine motions argued at the hearing as well as all other pending motions. [R. 5897 and R. 5890]

In order to provide background to the short November 13, 2019 hearing, we briefly summarize the seven mooted motions:

11

1) Howell's Motion for Partial Summary Judgment re: Defamation filed May 3, 2019: Howell filed an overlength motion with hundreds of pages of exhibits and declarations. [R. 1334-2020] 

2) Ms. Rota's Motion to Strike filed June 7, 2019: Ms. Rota filed this motion in response to some of the exhibits attached to Howell's Motion for Partial Summary Judgment re: Defamation (#1). [R. 2134]

3) Howell's Statement of Discovery Issues filed June 18, 2019: ▇▇▇▇

▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇

▇▇▇▇ [R. 2397-2512, 2582]

4) Howell's Show Cause Motion, infra, filed June 26, 2019: Addressed *infra.*

5) Ms. Rota's Motion for Partial Summary Judgment filed June 30, 2019.



██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ *Id.*

6) Ms. Rota's Verified Motion to Amend March 21 Order filed August 22, 2019. Addressed *infra*.

7) Howell's Statement of Discovery Issues filed September 3, 2019.

████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████ [R. 3092, 3279]

8) Howell's Motion to Exclude Damages Evidence filed October 21, 2019: ████████████████████████████████

███████████████████████████ [R. 2632]

9) Howell's Motion for Summary Judgment on Counterclaim filed October 21, 2019: ████████████████████████████

████████████████████████████████████████████

████████████████ [R. 3678]

**The Contempt Motion**

On June 26, 2019, Howell filed its "Amended Motion for Issuance of an Order to Show Cause in Re: Contempt of Protective Order and Supporting Memorandum." [R. 2664][2] (the "Show Cause Motion"). ███████████████

████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████

███████████████████████

        █  ██████████████████████████████

           ███████████████████████████████

        █  █████████████████████████████████

           ██████████████████████

        █  ███████████████████████████████████

           ███████████████████

---

[2] Howell labeled the motion as "Amended" because Howell's first filed motion the same day contained incorrect citations which it corrected in is amended filing.

[R. 2672-2675] 

- ███████████████████████████████████████████████

  ████████████████████████████ .

[R. 2754-2758]

Ms. Rota explained ██████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████

Ms. Rota ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████





. [R. 3699]

**The Hearing on the Show Cause Motion**

At a hearing held on November 13, 2019,

The district court requested  [R. 3931-3938]

---

3 Because the hearing transcript record appears to jump forward in its counting, the time is approximate. [R. 3891, 3895]

4 Ms. Rota was represented by Kenneth Reich and Grace Acosta at the hearing. [R. 3869]





[R. 3879-3880]

The trial court discussed with counsel ████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████

    ███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████

**The Contempt Order**

Following the November 13, 2019 hearing, for the next ten months, the nine motions remained unresolved by the trial court. Eventually, on September 2, 2020, the trial court entered the Contempt Order. The Contempt Order includes sections for "Background," "Findings of Fact," "Analysis," and "Conclusion." Contempt Order. The trial court appears



6



*Id.* at 17.

8

The trial court found 



### The Denial Order

Included in the nine outstanding motions was Ms. Rota's Motion to

Amend which the trial court addressed in the Denial Order. Denial Order,

App. E. The court repeated the assertion that ███████████████

---

[5] The district court also concluded that all other motions besides Petitioners'
Verified Motion to Amend March 21 Order (the "Amend Motion") were moot.

████████████████████████████████████████████████

██████████████████████████ *Id.*

This timely interlocutory appeal followed.

## Summary of the Argument

First, the district court failed to apply the correct legal standard. The court labeled its sanction findings as "civil contempt," yet the court's description of the contempt defines it as criminal in nature. There was no finding of contempt beyond a reasonable doubt. This was capricious, arbitrary, and an abuse of discretion requiring reversal.

Second, the trial court relied on erroneous facts to support the Contempt Order. Even if the trial court had applied the correct standard, the facts do not support contempt. There was no evidence of bad faith, intentional conduct, persistent dilatory tactics, or proof of willful disregard for the court's orders. The court relied on alleged facts that are contrary to the evidence. In particular, Ms. Rota had never previously been sanctioned for discovery misconduct, she had never been in violation of the Privacy Order, and the Protective Order was not "clear and unambiguous" and her alleged violations of it were based on reasonable interpretations of it.

Third, the trial court sanctioned Ms. Rota without providing her notice or opportunity to present evidence. The Show Cause Motion requested an order to show cause be issued and none ever was. The hearing on the motion was replete

with argument but not evidence. The court never informed Ms. Rota that the

hearing was an evidentiary hearing in which it expected to be provided

evidence.

Third, as a matter of law, the district court erred when it determined that

Ms. Rota violated the Privacy Order and Protective Order. The Privacy Order

does not apply to Ms. Rota and applies only to the court clerks. The Protective

Order is not "clear and unambiguous" because the court admittedly found that

Ms. Rota violated the "contextual" meaning of the order and not express terms. If

the Protective Order were "clear and unambiguous," it would not require

violation of the "contextual" meaning—it would be express.

Fourth, the sanction of striking Ms. Rota's answer and counterclaim was

error because it was excessive given the circumstances identified by the trial

court. The court determined that it was offended by Ms. Rota's conduct—there

was no other prejudice or harm that could be identified. The trial court found

that Ms. Rota violated the stipulated Protective Order by producing three

documents in a companion case. The documents were produced to the author of

those documents in a confidential setting—arbitration. There was no identifiable

prejudice or harm to any party or the judicial process. The trial court, however,

declared itself offended and sanctioned Ms. Rota with the most severe sanction

available. The alleged violations of the Protective Order and other bases the court

relied on either did not exist or are legally insufficient to deprive Ms. Rota of all claims and defenses.

Fifth, the Gag Order was never released and threatens to be a permanent injunction. It violates Ms. Rota's rights without justification. The Gag Order was entered to ensure a "fair trial," and yet, even when trial was obviated, the trial court has maintained the Gag Order as further punishment to Ms. Rota without legal or factual justification.

**Argument**

**1.    The District Court Applied the Incorrect Legal Standard**

The district court held Ms. Rota in "civil contempt" for failure to obey the Protective Order. Contempt Order at 20. However, the court erred when it applied the standard for general violations of discovery orders instead of the standard for civil contempt orders. Moreover, even though the district court labeled the contempt as "civil" and applied a "clear and convincing evidence" standard, it was actually a criminal contempt order and finding that should have applied the "beyond a reasonable doubt" standard. The failure to apply the correct legal standard requires reversal.

Rule 37(b) allows a court to strike pleadings based on discovery violations under subsection (4). The district court, however, expressly found that "Defendants are held in **civil contempt**, and that the following appropriate sanctions are imposed…" Contempt Order at 20 (emphasis added). This

implicates Rule 37(b) subsection (6): "… the court… may impose appropriate sanctions for the failure to follow its orders, including: (6) treat the failure to obey an order… as contempt of court…" Contempt is governed by different standards than simple discovery sanctions. *See, e.g., Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct.App.1991)).

The court in *Dickman Family Props., Inc. v. White*, 2013 UT App 116, ¶ 2, 302 P.3d 833 summarized the contempt standard:

> If a person is found to be in contempt, the court may impose various sanctions, including a fine, incarceration, or a compensatory monetary award to a party aggrieved by another's contempt. *See id.* §§ 78B–6–310, –311. A contempt proceeding may be civil or criminal in nature. "'The primary determinant of whether a particular contempt order is to be labeled civil or criminal is the trial court's purpose in entering the order.'" *Shipman v. Evans*, 2004 UT 44, ¶ 40, 100 P.3d 1151 (quoting *Von Hake v. Thomas*, 759 P.2d 1162, 1168 (Utah 1988), *superseded on other grounds as stated in State v. Hurst*, 821 P.2d 467 (Utah Ct.App.1991)). "[I]t is the purpose, not the method of the punishment, that serves to distinguish the two types of [contempt] proceedings." *Von Hake*, 759 P.2d at 1168. "'A contempt order is criminal if its purpose is to vindicate the court's authority, as by punishing an individual for disobeying an order, even if the order arises from civil proceedings.'" *Shipman*, 2004 UT 44, ¶ 40, 100 P.3d 1151 (quoting *Von Hake*, 759 P.2d at 1168). "A contempt order is civil if it has a remedial purpose, either to coerce an individual to comply with a court order given for the benefit of another party or to compensate an aggrieved party for injuries resulting from the failure to comply with an order." *Von Hake*, 759 P.2d at 1168. The characterization of a contempt proceeding determines the applicable standard of proof: criminal contempt must be proven beyond a reasonable doubt; civil contempt must be proven by clear and convincing evidence. *See id.* at 1172–73.
>
> ¶ 3 "The decision to hold a party in contempt of court rests within the sound discretion of the trial court and will not be disturbed on appeal unless the trial court's action is so unreasonable as to be

classified as capricious and arbitrary, or a clear abuse of discretion."
*Anderson v. Thompson*, 2008 UT App 3, ¶ 11, 176 P.3d 464 (internal
quotation marks omitted); *Shipman*, 2004 UT 44, ¶ 39, 100 P.3d 1151
(explaining that the district court's exercise of its contempt power is
reviewed for an abuse of discretion). That discretion "includes not
just the power to decide whether a party should be held in
contempt, but the power to determine whether [the purpose of] a
particular contempt order is civil or criminal." *Shipman*, 2004 UT 44,
¶ 40, 100 P.3d 1151 (citing *Von Hake*, 759 P.2d at 1168). "Only rarely
will we reverse the [district] court's decision in this matter" and only
in circumstances where the court's decision "is so unreasonable as to
be classified as capricious and arbitrary, or a clear abuse of ...
discretion." *Id*. ¶ 39 (omission in original) (internal quotation marks
omitted).

## 1.1 The Contempt Order entered an order of criminal contempt, not civil contempt

The district court's contempt sanctions were criminal in purpose. The

district court found that "Defendants' intentional, willful and persistent

disregard of the Court's orders requires a severe sanction." Contempt Order at

18. There was no attempt to initiate the contempt sanctions for a remedial

purpose. Rather, the district court held that the "Court expects parties to comply

with its orders," that the parties agreed to be bound the Protective Order, that

"Defendants failed to offer any adequate justification or excuse for their

misconduct," that "Defendants ignored the Court's warnings and refused to

comply with clear and unambiguous Court orders," and that the

"appropriateness of a harsh sanction in this case is only further supported by

Defendants' unapologetic response and request that they be compensated for

having to defend their wrongful behavior." *Id*. at 18-19. No remediatory element

was offered, the sanctions were not provided as an attempt to compensate

Howell for injuries resulting from the alleged failure to comply with the order, and there was no way for Ms. Rota to avoid the contempt sanction of striking her pleadings and having judgment entered against her. Hence, the sanction was criminal in purpose and not civil. The trial court's recitation of "civil contempt" and Rule 37(b) do not change the analysis because the trial court's stated "purpose" consistent with criminal sanctions is dispositive. *See Dickman Family Props., Inc.*, 2013 UT App at ¶ 3.

### 1.2 The district court failed to apply to proper legal standard

"As a general rule, in order to prove contempt for failure to comply with a court order it must be shown that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so. These three elements must be proven beyond a reasonable doubt in a criminal contempt proceeding, [], and by clear and convincing evidence in a civil contempt proceeding." *Von Hake*, 759 P.2d at 1172 (citations removed).

Here, the district court expressly made findings of fact and conclusions of law based on a "clear and convincing evidence" standard. Contempt Order at 11, 15, 16, 17. The district court erred when it made no findings based on the "beyond a reasonable doubt" standard. This requires reversal. *See Dickman*, supra, at ¶ 3.

### 1.3    The district court failed to make specific findings supporting criminal or civil contempt elements

"The district court must make 'explicit findings, whether written or transcribed, on the three elements of contempt.'" *Koehler v. Allen*, 2020 UT App 73, ¶ 14, 466 P.3d 738 (quoting *State v. Hurst*, 821 P.2d 467, 470 (Utah Ct. App. 1991)).

Although the district court plainly did not address the three contempt elements, we address the district court findings as to the three elements: 1) the contemnor knew what was required, 2) had the ability to comply, and 3) intentionally failed or refused to do so.

### 1.3.1    There was no evidence or finding that Ms. Rota knew what was required of her

The trial court never explicitly found that Ms. Rota knew what was required of her. Nevertheless, the court's conclusion that the Protective Order was "clear and unambiguous" and that Ms. Rota had "ignored the Court's warnings" could be argued to be "knowledge." It does not convey knowledge, however.

<u>First</u>, contrary to the district court's conclusion that Ms. Rota "ignored the Court's warnings," there were no warnings. The court recited but two instances: 1) the prior judge's offhand comment to counsel that "And I do think ███████ violated the Privacy Order and the Protective Order already" and 2) that the court "ordered ████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████.″ Contempt Order at 17.

As to the first-cited instance, there is no warning embedded there. It was

an aside by the prior judge in a hearing that Ms. Rota did not personally attend.

It was not a finding of the court, was not memorialized, and held no binding

significance. It did not warn of anything specific and was not a finding of the

court. The court and counsel exchanged:



There was no "warning" that would impute any knowledge to Ms. Rota

that a violation of the Protective Order, as opposed to the Gag Order that issued

after the above hearing, would or could result in termination of her claims and

defenses. Moreover, there is nothing in the Protective Order to provide Ms. Rota

any actual warning of what sanction could be imposed for a failure to abide its

terms. *See, e.g., Fed. Trade Comm'n v. Advocate Health Care Network*, 162 F.Supp.3d

666 (N.D. Ill. 2016) ("the confidentiality order here has no teeth … There's

nothing … other than some vague mention that a violation of the confidentiality

order 'may'—not 'will,' incidently—result in unspecified penalties for contempt.").

As to the second-cited instance, any 'warning' embedded in that discovery order was directed to Ms. Rota to appear for her deposition—which she did. There was no 'warning' there that would lead Ms. Rota to understand that a broader warning of sanctions was intended to be transmitted concerning other discovery or for violation of the Protective Order.

Second, the Protective Order was not "clear and unambiguous" and did not provide notice to Ms. Rota that any violation would or could result in contempt or catastrophic sanctions. The district court cited three sections of the Protective Order as "clear and unambiguous" that the court misinterprets or are vague as a matter of law.

The Court "interpret[s] language in judicial documents in the same way [it] interpret[s] contract language." *Iota LLC v. Davco Mgmt. Co.*, 2016 UT App 231, ¶ 33, 391 P.3d 239. "When interpreting a contract, we look to the language of the contract to determine its meaning ...." *Desert Mountain Gold LLC v. Amnor Energy Corp.*, 2017 UT App 218, ¶ 13, 409 P.3d 74 (quotation simplified). Furthermore, "[f]or the court to hold one in contempt of an order, that order must be ... sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning." *State v. L.A.*, 2010 UT App 356, ¶ 13, 245 P.3d 213 (internal quotation marks omitted); *see also id.* at ¶ 13 (*citing Foreman v. Foreman*,

111 Utah 72, 176 P.2d 144, 156 (1946) (Wolfe, J., concurring) ("[A] court order[,] to

be the basis of a finding of guilty of contempt for disobedience thereof[,] must be

clear and unambiguous.")).

"*Contextually restricted*": The district court appeared to recognize the

inherent ambiguity in the Protective Order by its statement that the certain terms

of the Protective Order were "clearly and contextually restricted to this

litigation…" Contempt Order at 12. If the terms were so "clear" and

"unambiguous," there would be no need to rely on *context*. Here, "context" is a

shorthand term to mean the *express* terms are missing or vague and the court

expected Ms. Rota to fill in the meaning by reference to surrounding terms.

Relying on "context" cannot be "sufficiently specific and definite as to leave no

reasonable basis for doubt regarding its meaning" in order to support criminal or

civil sanctions. *See State v. L.A., supra.* There must be proof that a contemnor

clearly knew what was expected. "Context" does not meet that burden. *See id.*

*Disclosure to authors*: The "contextually restricted" comment was related to

¶ 8 "or any other provision" of the Protective Order. Paragraph 8 █████

████████████████████████████████████████████████████████████

███████  The court interpreted the Protective Order to be "contextually restricted"

to "this litigation" and any disclosure could only be for purposes related to "this

litigation." Contempt Order at 12. The court criticized ████████████████████████

███████████████████████████████████████████████

████████████████████████████." *Id.*

The Protective Order, and in particular, ¶ 8, does not support the district

court's interpretation limiting any use to "this litigation":



The term "this litigation" is limited to ¶ 8(b). Paragraph 8(c) is the paragraph

that permitted Ms. Rota to provide copies to ██████████████████████

████████████████████████████████" did not, by

the express terms of ¶ 8, apply. Moreover, although there are other references

in the Protective Order to "this litigation," none of those references provide

the "context" that could reasonably be interpreted to mean that the

documents produced that are subject to the Protective Order would be

strictly limited to "this litigation," the parties to this lawsuit, and the

purposes of this lawsuit. *Id.* Indeed, the Protective Order allows recipients of

confidential documents to retain copies of the documents ████████████

███████████████████████ a purpose unrelated to "this litigation."

Protective Order at ¶ 16. Finally, █████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████

By the terms of the Protective Order, the only expressed concern was for protection from "public disclosure" and not disclosure or use in other contexts or lawsuits. Protective Order at 2. In particular, the Protective Order is silent as to whether documents can be used in any other litigation or for any other purpose other than "this litigation." The order simply requires protection of confidential information. Hence, even considering the "context," the Protective Order does not support the district court's restriction that documents could not be used in confidential arbitration.

*"Permission"*: The trial court held that █████████████████████
███████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████████████████
██████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████████

It is erroneous to impose on Ms. Rota the burden to misinterpret the Protective Order in the manner the district court has held. The district court's interpretation is not consistent with the plain terms of the Protective Order and is not "sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning." *State v. L.A.*, *supra*.

Hence, the Protective Order lacks both "contextual" clarity and actual clarity and could not impart to Ms. Rota knowledge of what was required of her—especially not to the level of "beyond a reasonable doubt" or even a level of "clear and convincing."

### 1.3.2 There was no evidence or finding that Ms. Rota "intentionally failed or refused" to comply with the Protective Order

The district court recites ████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████ Contempt Order at 16. The circumstances do not support this conclusion the way the district court imagines. Ms. Rota's production ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████



. This inference does not support "intentional"

conduct.

The district court also pointed to the removal of the bates numbers and "confidential" stamps from the three documents as further proof of willfulness and intentional conduct. The Protective Order, however, does not restrict the removal of either. Protective Order, *passim*; see *State v. L.A.*, 2010 UT App at ¶ 13 (""order must be ... sufficiently specific and definite as to leave no reasonable basis for doubt regarding its meaning..."). The district court cited paragraph 11 as its source as the "clear and unambiguous" term that told the parties how to petition for "removal" of a "CONFIDENTIAL" stamp:





Ms. Rota

. Hence, the last sentence of ¶ 11 is inapplicable. The

Ultimately, Ms. Rota's conduct was either expressly authorized by the Protective Order (¶ 8), not prohibited by the Protective Order (*passim*), and/or the Protective Order was ambiguous (*supra*). Hence, she could not have "intentionally failed or refused" to comply with the Protective Order when the Protective Order either authorized her conduct, did not preclude her conduct, and/or her conduct was subject to her reasonable interpretation of the order. Under such circumstances, the district court could not possibly have found that she intentionally failed or refused to comply with the order beyond a reasonable doubt or as clear and convincing.

41

## 2.    The District Court Violated Ms. Rota's Due Process Rights

"Utah law clearly requires certain minimum steps to accord due process in contempt proceedings." *Salt Lake City v. Dorman-Ligh*, 912 P.2d 452 (Utah App. 1996). "The due process provision of the federal constitution requires that in a prosecution for a contempt not committed in the presence of the court, the person charged be advised of the nature of the action against him [or her], have assistance of counsel, if requested, have the right to confront witnesses, and have the right to offer testimony on his [or her] behalf." *Von Hake*, 759 P.2d at 1170 (cleaned up).

Here, the due process issues concern 1) notice to Ms. Rota, 2) an opportunity to present evidence, and 3) an opportunity to confront witnesses. The district court ████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████
██████████

**2.1**    ███████████████████████████████████████
███████████████████████████████████
██████████████████████████████████████
█████████████████████████████████████████
███████████████████████████████████
█████████████████████████████████████



Moreover, the trial court made inaccurate statements in its Contempt

Order on the issue of notice:

First, the court stated in the Contempt Order that ███████████████

██████████████████████████████████████████████████████████

███████████████████ Contempt Order at 3. This is contrary to the

evidence which showed that ████████████████████████████

████████████████████████████████████. [R. 3872, 3874]

Second, the trial court asserted that the hearing was ████████████

██████████████████████████████████████████████

████████████████████████ Contempt Order at 3. The

hearing was not evidentiary. The trial court did not take evidence and never told

the parties that evidence was expected or invited ████████████████████

██████████████████████████████████.” The



## 2.2    The district court did not provide opportunity to present evidence or to confront witnesses

The court scheduled a two-hour hearing to hear nine extensive motions. Even if the court had informed the parties that the hearing was set for presentation of evidence (which it did not), there was not time. The trial court named the nine motions it expected to be heard. [R. 3881] The court did not give any particular attention to any one motion and told the parties to address them in the order filed. The nine motions were alle either dispositive or highly critical to the case. The Show Cause Motion apparently stood out to the court because it spent the first forty minutes discussing whether it would be argued at all. Yet, the court did not accord this motion any special attention or additional time for argument but took it in order. The defamation took the bulk of the time (over 70 minutes) and, at the end, the court limited to 15 minutes all argument on the Show Cause Motion that the court ultimately used to strike Ms. Rota's Answer and Counterclaim and enter default against her.

Even if the court were inclined to take evidence, the court did not allow time for the motion and cut off the limited argument that it allowed. (

 Finally, the district

court did not provide Ms. Rota an opportunity to confront the accusing

witnesses: no witnesses were called.

**3.    The Contempt Order Was Based on Erroneous Factual Evidence**

"On review of both criminal and civil proceedings, we accept the trial

court's findings of fact unless they are clearly erroneous." *Von Hake*, 759 P.2d at

1172.

Here, the district court relied on numerous erroneous factual findings in

the Contempt Order:

<u>First</u>, Ms. Rota ███████████████████████

████████████████████████████████████

█████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████

███████████████████████████████████████████

██████████████████████████████.

     <u>Second</u>, Ms. Rota did not previously fail to comply with court orders. The district court asserted that ████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████. It was not accompanied by evidence or a motion identifying alleged violations of the Privacy Order or Protective Order. Yet, the district court endowed it with meaning as if it were an order of the court to be relied upon as an established fact. This was error.

     Moreover, any alleged violation of the "Privacy Order" was impossible because that order does not bind any party—it is an order expressly directed to the "clerk of the court" to classify the pleadings as protected. It imposed no obligation on any party. Hence, when the prior judge said that he thought Ms. Rota had violated the Privacy Order, he did so without any factual or legal basis. Reliance on this purported 'violation' was, therefore, erroneous.

     <u>Third</u>, there was no evidence █████████████████████████

███████████████████████████████████████████

████████████████████████████████ There was no evidence of this.

The declarations supporting the Show Cause Motion ██████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████.

     Fourth, no evidentiary hearing was held despite the district court's

assertion one had. *Supra.*

     Fifth, contrary to the Contempt Order, ██████████████████

████████████████████████████████████████████████████

██████████████████████" Contempt Order at 3. *See supra.*

     Sixth, the Arbitration was not "completely unrelated." *See supra.* ██████████

████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

     Seventh, there were no court-issued "warnings" for Ms. Rota to ignore.

Contempt Order at 19. *See supra.*

Eighth, the trial court erroneously found 

### 3.1    Alternatively, the Contempt Order Was Unwarranted Under the Civil Contempt Standard

For the reasons set forth, including the factual errors and errors in the interpretation of the Protective Order, the Contempt Order cannot withstand scrutiny under the civil contempt standard requiring proof upon clear and convincing evidence. *See Von Hake*, 759 P.2d at 1172.

### 3.2    Alternatively, the Contempt Order Was Unwarranted as a Discovery Sanction Under Rule 37(b)(4)

For the reasons set forth, including the factual errors and errors in the interpretation of the Protective Order, the Contempt Order cannot withstand scrutiny as a discovery sanction. *See Kilpatrick*, 2008 UT at ¶ 23.

## 4.    Striking Ms. Rota's Answer and Counterclaim Is Unwarranted and Excessive Under the Circumstances

Although a district court has substantial discretion in the selection of sanctions, the sanctions must still be reasonably related to the conduct at issue.

### 4.1    Striking pleadings and defaulting Ms. Rota was excessive and an abuse of discretion

"The striking of pleadings, entering of default, and rendering of judgment against a disobedient party are the most severe of the potential sanctions that can be imposed …." *Utah Dept. of Transp. v. Osguthorpe*, 892 P.2d 4, 7 (Utah 1995). There were numerous lesser sanctions available that the court never discussed, never considered; instead, the court declared itself offended by the purported conduct and initiated the 'nuclear option' of all discovery sanctions which is not

favored because the "trial court's range of discretion is more narrow than when the court is imposing less severe sanctions." *Id.* at 8.

"In cases meriting sanctions, there is often a consistent pattern of behavior disregarding discovery requirements or court orders, as well as evidence that the sanctioned party is on notice that its pattern of behavior will result in sanctions if it continues." *Kilpatrick*, 2008 UT at ¶ 35; *see e.g.*, *Osguthorpe*, 892 P.2d at 7 (16 months of delay with "numerous notices, motions, and orders"); *First Fed. Sav. & Loan Assn. v. Schamanek*, 684 P.2d 1257, 1261 (Utah 1984) (party refused to respond to written discovery and deposition questions even after order compelling response); *Amica Ins. Co. v. Schettler*, 768 P.2d 950, 962 (Utah Ct. App. 1989) (fabricated testimony, aggravated misconduct, deliberate disobedience to discovery orders, witness tampering, and failure to respond to motion to compel); *Hales v. Oldroyd*, 2000 UT App 75, ¶ 3, 999 P.2d 588 (refusal to respond to written discovery, return medical releases, respond to motions to compel, and respond to motion for sanctions); *Morton*, 938 P.2d at 274 (requested continuances delaying trial for one year, failed to respond to interrogatories, failed to respond to motion to compel or face dismissal, and failed to respond to court order threatening dismissal if no response was received by a certain date); *Marshall v. Marshall*, 915 P.2d 508, 512, 515 (Utah Ct. App. 1996) (thirteen instances of failure to provide discovery documents, failure to comply with discovery orders, hiding $180,000 from the court over two years and claiming

inability to afford child support; two separate motions for sanctions six months apart requesting default).

Here, the district court recited numerous allegations that were unsupported by evidence. These erroneous allegations fatally undermine the district court's conclusions regarding any alleged willful behavior, bad faith, fault, or persistent discovery abuse.

Indeed, the pattern of egregious behavior is absent here. ████████████

██████████████████████████████████

██████████████████████████████████

████████████████████████████

████████████████████

Precedent from the Tenth Circuit is apt here. In *Ehrenhaus v. Reynolds*, the Tenth Circuit established a set of factors in evaluating discovery sanctions. 965 F.2d 916, 921 (10th Cir. 1992). Under *Ehrenhaus*, the following factors are considered and applied: (1) the degree of actual prejudice to the other party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Id*. (citations omitted). "Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction." *Id*. Because of this strong preference, the

Tenth Circuit, like Utah courts, has held that a "dismissal or default sanctions order should be predicated on "willfulness, bad faith, or [some] fault" rather than just a simple "inability to comply." *Lee v. Max International, LLC.*, 638 F.2d 1318, 1321 (10th Cir. 2011) (cleaned up).

Applying the *Ehrenhaus* factors here shows abuse of discretion of the district court sanctions:

First factor: ████████████████████████████████████████
████████████████████████████████████████████████████.

Second factor: ████████████████████████████████████████
██████████████████████████████████████████
███████████████████.

Third factor: ████████████████████████████████████████
████████████████████████████████.

Fourth factor: As discussed supra, the Protective Order provides the parties no warning as to any violation and the district court gave no warning to Ms. Rota.

Fifth factor: The district court issued the Gag Order which could be construed as a 'lesser sanction' and Ms. Rota has complied with this order. No other lesser sanction was attempted.

Under the facts, the aggravating factors do not outweigh the judicial system's strong predisposition to resolve cases on their merits and dismissal of Ms. Rota's Answer and Counterclaim was not an appropriate sanction. *Id*.

**5.**    **The Gag Order Is Unconstitutional and Should Be Dissolved**

The Denial Order failed to address the substantial constitutional free speech problems inherent in the Gag Order, the inherent ambiguities in the Gag Order, and the chilling effect the order imposed on Petitioners' livelihood.

**5.1**    **The Gag Order is vague and chills communication**

The district court entered an order that Ms. Rota finds vague. ███████

███████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

At first blush, the Gag Order appears to be a ████████████████

███████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████

██████████████████████████████████████████



.

### 5.2 The Gag Order should have been dissolved when the district court defaulted Ms. Rota

When the district court entered the Contempt Order and defaulted Ms.

Rota, it should have dissolved the Gag Order. Instead, the district court posited

The first two concerns are erroneous as set forth, *supra*. Ms. Rota has not

disregarded court orders and never engaged in repeated disregard of court

orders. The unsupported assertions are offensive to notions of fairness and

justice.

Finally, the reasons for the original order not those the court now asserts.

The Gag Order was entered because the prior judge expressed



Following dismissal of Ms. Rota's claims, those concerns no longer existed and the Gag Order should have been dissolved.

Once the district court struck the Answer and Counterclaim and defaulted Ms. Rota, ▮▮▮▮▮▮▮▮▮▮▮▮▮ were resolved. What remained ▮▮▮

## Conclusion

The trial court's errors in law and fact warrant this Court vacating the Contempt Order and reinstating Ms. Rota's Answer and Counterclaim. The trial

court's Denial Order and Gag Order should be vacated and the matter of instructions to the parties and contacting witnesses remanded to the trial court for further action consistent with law and the facts and, if warranted, entry of an order that is clear, lawful, and reasonably tailored to the circumstances.

DATED this 10th day of January, 2022.

REICH LAW GROUP

/s/ Kenneth L. Reich
Kenneth L. Reich
*Attorneys for Appellants*

**Certificate of Compliance**

I hereby certify that:

1.      This brief complies with the word limits set forth in Utah R. App. P. 24A(g)(1) because this brief contains 13,024 words, excluding the parts of the brief exempted by Utah R. App. P. 24A(g)(2).

2.      This brief complies with Utah R. App. P. 21(h) regarding public and non-public filings.

DATED this 10th day of January, 2022.


/s/ Kenneth L. Reich

**Certificate of Service**

This is to certify that on the 10th day of January, 2022, I caused the *Brief of Appellants August Education Group, LLC, and Aparna Vashisht Rota* to be served via email on:

> Jefferey W. Shields
> Nathan D. Thomas
> Elizabeth Butler
> JONES, WALDO, HOLBROOK
> & McDONOUGH, P.C.
> jshields@joneswaldo.com
> nthomas@joneswaldo.com
> ebutler@joneswaldo.com
> *Attorneys for Appellee Howell Management Services, LLC*

/s/ Kenneth L. Reich